ERDMAN *v.* ERDMAN.

## Opinion delivered July 14, 1913.

1. CHATEL MORTGAGES—TRANSFER OF CHATTEL MORTGAGE.—The *bona fide* purchaser of a note secured by a chattel mortgage becomes the owner of the note and mortgage, and has the right to foreclose the mortgage without a transfer endorsed on the mortgage. (Page 159.)

2. EXECUTION—MORTGAGED PROPERTY.—Chattels covered by a mortgage are not subject to execution and attachment. (Page 159.)

3. FRAUDULENT CONVEYANCES—EVIDENCE—BONA FIDES.—Evidence *held* to show a transfer of a note and mortgage by a father to his daughter, not fraudulent as to creditors. (Page 159.)

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; reversed.

STATEMENT BY THE COURT.

Appellant brought this suit to foreclose a chattel mortgage and subject to sale the mules in controversy, which had been seized by attachment at the suit of H. Beuchley, against her father, F. F. Erdman.

It was alleged that F. F. Erdman was indebted to Dan Lewis in the sum of $600, and on the 24th day of April, 1911, executed and delivered to him a promissory note for that sum due April 24, 1912, and bearing 10 per cent interest from maturity, and to secure the payment of same, he executed jointly with his wife, Josephine Erdman, a chattel mortgage, including the two mules in controversy. That on August 2, 1912, the mortgagee transferred the note for value to Nellie Erdman. That the mortgage provided that in case default should be made in payment, the mortgagee, the owner of the indebtedness secured by the mortgage is authorized to take charge of the property and sell and dispose of same; that default had been made; that no part of the note had been paid, except as appeared from the endorsements thereon. It was further alleged that Tom Burnett, as constable, had seized and taken from her possession the two mules, and refused to return them for the purpose of sale and foreclosing the mortgage. That he claimed to have taken them by a writ of attachment issued by a justice

of the peace in Carlisle Township, sued out in a case therein, wherein H. Beuchley was plaintiff and F. F. Erdman was defendant. That the constable was about to dispose of the property under an order of sale from the justice of the peace issued after the order of seizure of the property under an attachment. Prayed a temporary restraining order against the constable from selling the property under execution, for judgment against Erdman for the amount due on the note, that the same be declared a lien upon the property and foreclosure had to satisfy the indebtedness.

The constable answered, denying that Nellie Erdman was the owner of the note, and that she paid $600 therefor, and that F. F. Erdman and his wife were indebted to her in any sum; denied that the note had not been paid in full, and alleged that the mortgage was never sold or legally assigned and transferred to her; denied that default had been made in the payment of the note.

Alleged further that the transfer of the note to Nellie Erdman was fraudulent, that she was the daughter of F. F. Erdman and his wife; that the pretended transfer was made to prevent the attachment being issued, and that the note and mortgage had been satisfied in full.

H. Beuchley filed an interplea, alleging that he had instituted suit on August 20, 1912, against F. F. Erdman and his wife for the recovery of $127 due on account, and had an attachment issued against this property; that the mules had been advertised for sale by Mrs. Erdman; that before the property was attached he investigated the records and found that they had been mortgaged, and upon further investigation received a letter from the mortgagee, D. Lewis, stating that he had received his money, and that the mortgage was satisfied in full. That he examined the mortgage on August 12, 1912, and that it had not been transferred or assigned to Nellie Erdman, and that D. Lewis, the payee of the note, wrote him it was satisfied in full, and that he had not authorized its transfer or assignment. Alleged that the note and mortgage were transferred to Nellie Erdman after his attachment

was levied; that the attachment had been sustained, and Mrs. F. F. Erdman, as agent for her husband, appealed from the decision of the court sustaining it, and that the appeal was then pending in the circuit court. That the action by Nellie Erdman was instituted by collusion, and for the purpose of cheating, hindering and delaying him in the collection of his just debt, and that D. Lewis stated the note had been paid in full, and that he did not transfer or assign the same to Nellie Erdman, or authorize the transfer of same to her. That the pretended transfer of the note was fraudulent, and made with the intent to defeat the collection of the debt. Prayed that the complaint be dismissed; that the transfer under the assignment of the mortgage be cancelled and set aside, and that the injunction be dissolved.

Nellie Erdman filed an answer to the interplea, denying each of the allegations thereof.

F. F. Erdman filed an answer, and admitted the execution of the note and the mortgage to secure the indebtedness, and that same had not been paid, and that he had no defense to make against the foreclosure of the mortgage and the collection thereof.

It appears from the testimony that Nellie Erdman purchased the note about August 2, 1912, from Trimble, Jr., who stated at the time that he had it for collection, and had the right to sell and transfer it to her. That she paid him $600 with her check for the note, said check being on the German National Bank at Little Rock; that the note was secured by a chattel mortgage, and the property was in possession of Mrs. Erdman at the time she purchased the note. That these mules were afterward attached by H. Beuchley, and taken by the constable, one of the defendants in the suit, she, at the time, telling him she had a mortgage on them. She said further, that the note was delivered to her on August 2, 1912, and Mr. Trimble, at the time of the transfer thereof to her, agreed to transfer the mortgage; that she did not go to the courthouse and have it transferred, and that Mr. Trimble showed her his authority to transfer and assign the note,

which he did on August 2, 1912, and delivered it to her at that time.

Mrs. Erdman testified that she executed the note to secure her husband's indebtedness; that she was only surety thereon. She signed it because the mortgagee required it. She was also present when Mr. Trimble transferred the note to Nellie Erdman; stated that Mr. Trimble said he would have the mortgage transferred on the record that evening. The mules were attached on Monday morning, August 12. She told the constable when he came and seized them, that there was a mortgage on them. The mortgage was given to Mr. Lewis to secure the $600 note; that she had advertised the mules for sale properly, and the proceeds thereof were credited on the back of the note paid to Nellie Erdman. She denied having deposited the proceeds of the sale of her home in the German National Bank, and stated that her daughter paid $600 for the note.

T. C. Trimble, Jr., testified that he received a letter from D. Lewis, at Warrensburg, Mo., enclosing the note for $600, dated April 24, 1911, and due October 24, 1911, with interest from maturity until paid. The note was made payable to Dan Lewis or order, and included the two mules in controversy, in addition to other property. The note was sent to his firm for collection with instructions to exercise his best judgment in the collection thereof. That he went to Carlisle to see Mr. Erdman, and was advised that he had left the State, and that it was not his intention to return. He then went to see Mrs. Erdman, and she refused to pay the note, saying it was Mr. Erdman's debt. After some correspondence with Mr. Lewis, he instructed us to do the best we could with it; to do just the same as if it were our business, and he would be satisfied. After receiving these instructions, he again went to Carlisle to see Mrs. Erdman. Her daughter was present when he demanded the payment of the note. She again refused to make payment, and I proposed that if she would pay $600, the face value of the note, I would return the mortgaged property to her, and

she could do with it as she saw best. She declined to accept this proposition. He then left the house, and after he had gotten 100 yards away from the house, her daughter, Nellie Erdman, called to him and asked if she would be safe in purchasing same, and could enforce the mortgage the same as Mr. Lewis. He stated he told her he had full authority to transfer the note and mortgage, and that she would be perfectly safe in buying it, and would be subrogated to all the rights of Dan Lewis; and that he would transfer the mortgage on his return home. Upon this assurance, she gave him a check on the German National Bank of Little Rock, for the sum of $600. The check was signed by her and drawn on her account. He then made the proper transfer and assignment of the note in writing on the back thereof, and delivered it to her at the time. Assignment of the note was made on August 2, 1912. I returned home on the next train, and turned the check over to another member of the firm, after having first 'phoned to the cashier of the bank at Little Rock to know if the check would be paid. Through some mistake, he neglected to go to the clerk's office and make the transfer and assignment of the mortgage until the 12th of August, or just before the attachment was levied. On August 7, 1912, we sent a check to D. Lewis for $600, less our commission, and on the 9th of August, D. Lewis acknowledged receipt of same, and stated that it was satisfactory to him. As soon as they heard of the attachment, the senior member of the firm informed him (Beuchley) that there was a mortgage on the mules, not satisfied. On the 15th of August, we called Mr. Lewis's attention to the fact of what Mr. Beuchley had stated, and requested him to write Mr. Beuchley that the indebtedness had been transferred to Miss Nellie Erdman. On August 17, we received a letter from Mr. Lewis, and among other things, it stated: "I suggested to Mr. Beuchley from the first to consult with you about this, as I had entire business in your charge, and that you would likely know more about it than anyone." When I went to Carlisle on the morning of August 2, it was my

intention that if I did not collect the note to get possession of the property held under the mortgage. I became satisfied the property would not bring the debt at public sale, and I was anxious to do the best I could for our client. When Miss Erdman offered to buy the mortgage, paying the face value for same, $600, under the assurance that she would succeed to the rights of D. Lewis, I accepted her proposition. I never knew anything about any other claim against Mr. Erdman at the time. I never heard of Mr. Beuchley's claim, and never thought that any one anticipated attaching this property under this mortgage.

H. Beuchley stated that he was a merchant at Carlisle, was acquainted with F. F. Erdman and his wife and Miss Nellie Erdman. That F. F. Erdman, her father, was indebted to him on or about August 12, 1912, in the sum of $127 for merchandise. That he left the State, and left no property unencumbered. When he ascertained that the others were also going to leave, he tried to collect his account. He wrote to D. Lewis, to whom the mortgage was given, who replied on August 8, as follows: "I have just now a letter with a check from Mr. Trimble for my money. So I have no further claim on the mules." I sent this letter to my attorney at Lonoke, and instructed him that the mules were now free and advertised for sale by Mrs. Erdman. I had sent a collector to get the money, and they had said it was Mr. Erdman's debt, and he could pay the money himself. After the sale we got in correspondence with Mr. Lewis, and, knowing there were two mules left, and knowing that he had a mortgage on them, we looked up the record to see if it had been transferred. Said he received the following letters from Mr. Dan Lewis, the mortgagee:

"August 9.

"My Dear Mr. Beuchley: I had a letter from my son, Dan, who is now visiting in Carlisle, and he said you wanted to know if I had a mortgage on Erdman's mules, that Erdman owed you $150. I wrote Dan I had a mortgage on the mules, etc., and had the whole business in

Mr. Trimble's hands for collection. They owed me $600 on this mortgage. I just now have a letter with check from Mr. Trimble for amount of money, so I have no further claim on the mules, etc. My mortgage did cover the mules, implements, crops, tools, household goods, etc., but so far as I am concerned, all this stuff is open for you to attach now, if you should see fit to do so. I did not have Mr. Trimble's letter when I wrote Dan     *     *     *''

"August 15.

"Dear Friend: As I wrote you on August 9, I sent my $600 note on Erdman to Mr. Trimble, Jr., for collection. I did not assign it over to any one. Mr. Trimble collected it, and I suppose just gave them their note after it was paid. You might ask Mr. Trimble about it, as he already knows a good deal about it.     *     *     *     But it is best for you to consult with Mr. Trimble about the whole business at once, if you have not already consulted some attorney.     *     *     *''

After searching the records to see if there was any assignment of the mortgage, he had the mules attached. That he did this because Mrs. Erdman had advertised them for sale in the Carlisle paper. Miss Nellie had an advertisement in the same issue of the paper for the sale of an electric fan.

He admitted that he had been called on the phone by Judge Trimble on August 12, and told that Dan Lewis had a mortgage on the property, and he replied that Lewis said he didn't have any interest in them, and Mr. Trimble said, "There must be some mistake," to which he replied, "I suppose the man who owns the property knows what he is doing." He said that Nellie Erdman was a daughter of the defendant, and that the attachment was sustained by the court, and he got judgment for the amount sued for, and the property was advertised for sale, and the constable was enjoined from making the sale. The testimony shows that his account against Erdman was for merchandise and groceries furnished before Erdman left the State some time in April or May.

The constable testified that Mrs. Erdman, when he served the attachment and got possession of the mules, told him he was attaching mules that were covered by a mortgage to Dan Lewis.

The clerk testified that the mortgage had an endorsement on it, as follows: "For and in consideration of $600, do transfer and assign the within mortgage to Nellie Erdman, without recourse against me, either law or equity. August 2, 1912, D. Lewis, by Trimble, Robinson & Trimble, Attorneys. Attested by clerk, August 12, 1912." The transfer on the record was made August 12, 1912, in the afternoon.

The parties agreed and sold the mules, and they brought $200 in cash, which was deposited in the hands of the clerk of the court, subject to the order and decree.

The court held that the alleged transfer of the note and mortgage to Nellie Erdman was not a *bona fide* transaction and was fraudulent, and that Dan Lewis, the original mortgagee and payee, had received the full amount due him, secured by the mortgage prior to the bringing of the attachment, and that the alleged assignment was made to prevent the interpleader from collecting his debt. Sustained the interplea and rendered judgment for the amount claimed, with interest, and directed that it be paid out of the funds in the hands of the clerk. That the remainder thereof be paid to F. F. Erdman and his wife, and from the decree, Nellie Erdman appealed.

*Trimble & Trimble,* for appellant.

1. At the time of the purchase of the note and mortgage by appellant, the note only was at hand, and it was duly transferred and assigned to her in writing. The mortgage had been filed, pursuant to the statute, in the clerk's office, and could not be taken out. Through oversight, the transfer and assignment was not formally endorsed on the mortgage until subsequent to the time the attachment was sued out; but that does not affect the rights of the appellant, since the mortgage was but a mere incident of the debt which passed with the assign-

ment of the debt.   27 Cyc. 967; 11 Ark. 44; 18 Ark. 599; 18 Ark. 85; 60 Ark. 90.

2.   Personal property included in a mortgage is not subject to execution or attachment.   94 Ark. 297; 42 Ark. 236; 58 Ark. 289-291.

*Charles A. Walls,* for appellee, Beuchley.

The evidence fully sustains the finding that the transaction between appellant and her mother as agent for her father, was not a *bona fide* transaction, and that the alleged assumption of the mortgage by appellant was fraudulent and made for the purpose of preventing appellee from collecting a just debt.   27 Cyc. 1290.

The chancellor's finding will not be disturbed where it is sustained by a fair preponderance of the evidence, nor even where the evidence is evenly balanced.   101 Ark. 510; 102 Ark. 51; 77 Ark. 305; 100 Ark. 370.

KIRBY, J. (after stating the facts).   It is not disputed that the note for $600 to Dan Lewis, and the mortgage to secure the payment thereof, executed by F. F. Erdman and his wife, are valid instruments, and the testimony shows, without contradiction, in fact, that the note secured by the mortgage was duly transferred to Nellie Erdman upon her purchase thereof, and the payment of $600 of her own funds therefor.

Certainly the great preponderance of the evidence, if not the undisputed evidence, shows it was a *bona fide* transaction, and, under the law, she became the owner of the note, and the mortgage by reason of the purchase of the note and its transfer to her, and had the right to foreclose it without a transfer endorsed upon the mortgage.   27 Cyc. 967; *Wilson* v. *Biscoe,* 11 Ark. 44; *Biscoe* v. *Royston,* 18 Ark. 509; *Hannah* v. *Harrington,* 18 Ark. 85; *Pullen* v. *Ward,* 60 Ark. 90.

The mortgaged property was not subject to the execution and attachment, and appellant is entitled to have it subjected to the payment of the note purchased from the mortgagee.   *Maxey* v. *Cooper,* 94 Ark. 296; *Buck* v. *Bransford,* 58 Ark. 289.

The court should have rendered a decree in favor of appellant, subjecting the mortgaged property to the payment of the note secured by the mortgage, of which she was transferee, free from the attachment lien of the interpleader, and directed the clerk of the 'court to pay the sum for which the property was sold to her to be credited upon the note.

The decree is reversed and the cause remanded with directions to enter a decree in accordance with this opinion.